54 A.3d 23

HEARST TELEVISION, INC., d/b/a WGAL–
TV and Daniel O'Donnell, Appellants

v.

Michael L. NORRIS, in his Official Capacity as Coroner
of Cumberland County, and the Pennsylvania Office
of Open Records, Appellees.

Supreme Court of Pennsylvania.

Argued May 9, 2012.

Decided Oct. 17, 2012.

Michael Louis Berry, Exton, Jonathan R. Donnellan, Gayle Chatilo Sproul, Philadelphia, Stephen H. Yuhan, for Hearst Television Inc., d/b/a WGAL–TV, and Daniel O'Donnell.

Melissa Bevan Melewsky, Pennsylvania Newspaper Association, for Appellant Amicus Curiae, PA Newspaper Association.

Keith Orr Brenneman, Sneibaker & Brenneman, P.C., Mechanicsburg, for Michael L. Norris.

Charles Rees Brown, PA Department of Community and Economic Development, Nathanael J. Byerly, Office of Open Records, Dena Lefkowitz, Commonwealth of PA, for Office of Open Records.

Terressa E. George, Law Offices of William J. Haberstroh, William J. Haberstroh, Altoona, for Appellant Amicus Curiae, Pennsylvania Coroner's Association.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

Following the death of a college student in Shippensburg, Hearst Television, Inc., d/b/a WGAL–TV and its reporter, Daniel O'Donnell (Requester), filed a Right to Know Law (RTKL) request with Michael Norris, the Coroner of Cumberland County (Coroner), seeking the student's manner of death. The Coroner rejected the request, and the Pennsylvania Office of Open Records (OOR) upheld the Coroner's decision. On appeal, the trial court and the Commonwealth Court affirmed. We reverse, holding that under Section 1236.1(c) of the Coroner's Act, 16 P.S. § 1236.1(c), and the RTKL, 65 P.S. §§ 67.101–67.3104, the Coroner's record indicating the manner of death was immediately available to Requester.

Because this case involves the interpretation and interplay of two statutes, a brief review of the relevant provisions is helpful before we turn to the facts of the case. First, the Coroner's Act[1] authorizes the county coroner to investigate certain deaths to determine their cause and manner. *See* 16 P.S. § 1237(a) & (b) (authorizing the coroner to investigate the facts and circumstances of certain deaths for the purpose of determining "the cause of any such death"); *id.* at § 1238 (authorizing the coroner to perform an autopsy or conduct an inquest when the coroner cannot otherwise determine the cause and manner of death); *id.* at § 1239 (authorizing the coroner to investigate a sudden death to determine its cause and manner); *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 88 (2004) (recognizing that "[a]lthough death itself occurs in innumerable ways, there are but a limited number of manners of death: suicide, natural causes, accident, homicide or, in rare instances, indeterminable."). The Coroner's Act further imposes an obligation to deposit all of a coroner's official records and papers for public inspection, free of charge, as follows:

1. The collection of statutory provisions commonly referred to as the Coroner's Act are contained in The County Code at 16 P.S. §§ 1214 and 1231–1260. *Penn Jersey Advance, Inc. v. Grim,* 599 Pa. 534, 962 A.2d 632 (2009).

Every coroner, within thirty (30) days after the end of each year, shall deposit all of his official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein.

16 P.S. § 1251. It is not disputed that the "official records and papers" that must be deposited annually include cause and manner of death records. *C.F. Penn Jersey Advance, Inc. v. Grim* 599 Pa. 534, 962 A.2d 632, 636 (2009). Additionally, Section 1236.1(a) & (b) of the Coroner's Act gives coroners discretion to accommodate "requests for examination or other professional services by other counties or persons" subject to guidelines established by the county commissioners and for established fees.[2]

█ Section 1236.1(c) allows the coroner to charge a limited fee for autopsy reports, toxicology reports, inquisition or coroner's reports, and "other reports and documents requested by nongovernmental agencies." 16 Pa.S.A. § 1236.1(c). The parties agree that the manner of death record requested in this case is included in Section 1236.1(c) as an "other report or document."[3] Accordingly, although the coroner is obligat-

**2.** Section 1236.1 provides in its entirety:

(a) Requests for examinations or other professional services by other counties or persons may be complied with at the discretion of the coroner pursuant to guidelines established by the county commissioners.

(b) A set of fees and charges for such examinations or professional services shall be established by the coroner, subject to approval by the county commissioners, and shall be accounted for and paid to the county treasurer pursuant to section 1760. Payment for examinations or professional services shall be the responsibility of the county or person requesting such services.

(c) The coroner may charge and collect a fee of up to one hundred dollars ($100) for each autopsy report, up to fifty dollars ($50) for each toxicology report, up to fifty dollars ($50) for each inquisition or coroner's report and such other fees as may be established from time to time for other reports and documents requested by nongovernmental agencies. The fees collected shall be accounted for and paid to the county treasurer pursuant to section 1760 and shall be used to defray the expenses involved in the county complying with the provisions of the act of March 2, 1988 (P.L. 108, No. 22), referred to as the Coroners' Education Board Law.

16 P.S. § 1236.1.

**3.** Although the RTKL request advanced in this case requested only the manner of death, cause of death and manner of death determinations

ed to deposit its official records and papers, including cause and manner of death records, for public inspection with the prothonotary by January 30 of the following year, *see id.* § 1251, Section 1236.1(c) of the Coroner's Act also provides a rapid means of procuring coroners' records for a fee if an entity or individual does not want to wait until thirty days after the end of the year. *See Penn Jersey,* 962 A.2d at 637 (reconciling an asserted conflict between the year-end reporting requirement of Section 1251 and the fee provision of Section 1236.1(c) by explaining that "Section 1236.1 [ (c) ] merely provides a rapid means of procuring an autopsy report for those who do not wish to wait until after the end of the year, and who are also willing to pay the charges associated with procuring it.").

█ The other statute involved in this case is the RTKL, 65 P.S. §§ 67.101–67.3104. The RTKL presumes that all records in possession a local agency are public, *see* 65 P.S. § 67.305, and are therefore accessible for inspection and duplication, *see* 65 P.S. § 67.701. A public record is defined as "[a] record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. The exemption implicated here is Section 708(b)(20), which exempts, *inter alia,* a coroner's autopsy records. Importantly, however, Section 708(b)(20) also contains a proviso that "[t]his exception

are generally treated the same by the Coroner's Act. Indeed, the document that indicates the manner of death, entitled Report of Death, also includes the cause of death, the name, age, and address of the decedent, and the time, date, and place of death. The Coroner also is responsible for autopsy reports, which are subject to both the annual reporting requirement of Section 1251 and are available at other times pursuant to Section 1236.1(c). *See Penn Jersey Advance, Inc. v. Grim,* 599 Pa. 534, 962 A.2d 632, 636 (2009). There is no argument in this case that the manner of death record at issue in this case is not subject to Section 1251 and 1236.1(c). Moreover, all parties agree that *Penn Jersey*, which involved autopsy reports, is equally applicable to the manner of death record requested in this case. As discussed below, however, the RTKL distinguishes between autopsy records and "cause and manner of death." *See* 65 P.S. § 67.708(b)(20).

shall not limit the reporting of the name of the deceased individual and the cause and manner of death." 65 P.S. § 67.708(b)(20).[4] The RTKL also contains a conflict provision: "[i]f the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply." 65 P.S. § 67.3101.1.

With this statutory background in mind, we turn to the facts of this case. On April 16, 2009, a nineteen-year old college student was found dead in his Shippensburg apartment, and, subsequently, the Coroner investigated his death. In due course, the Coroner determined the student's cause and manner of death. Requester filed a Right–to–Know request (Request) with the Coroner pursuant to the RTKL, seeking solely the "[m]anner of death." The Coroner, acting in accord with the RTKL as an Agency Open Records Officer, see 65 P.S. § 67.502,[5] denied the request. The Coroner indicated that cause and manner of death records would only become available to the public thirty days after the end of the year in accord with Section 1251 of the Coroner's Act, 16 P.S. § 1251. The Coroner viewed the RTKL as providing no greater right of access than that already provided in Section 1251 of the Coroner's Act.

Pursuant to the RTKL, Requester appealed the Coroner's determination to the OOR. See 65 P.S. § 67.1101. On May 27,

---

4. The full text of Section 708(b)(20) is as follows:

(b) Exceptions.—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

\* \* \*

(20) An autopsy record of a coroner or medical examiner and any audiotape of a postmortem examination or autopsy, or a copy, reproduction or facsimile of an autopsy report, a photograph, negative or print, including a photograph or videotape of the body or any portion of the body of a deceased person at the scene of death or in the course of a postmortem examination or autopsy taken or made by or caused to be taken or made by the coroner or medical examiner. This exception shall not limit the reporting of the name of the deceased individual and the cause and manner of death.

65 P.S. § 67.708(b)(20).

5. Section 502 of the RTKL requires each agency to designate an official or employee to act as an open-records officer to receive requests submitted under the RTKL. 65 P.S. § 67.502.

2009, the OOR issued a determination denying the appeal and affirming the Coroner's determination, concluding that the cause and manner of death record only becomes a public record subject to disclosure under the RTKL when it has already been made public pursuant to Section 1251 of the Coroner's Act. Thus, Requester would have to wait to view the manner of death record until the Coroner deposited his official records and papers with the prothonotary by January 30, 2010.

Requester filed a motion for reconsideration, which the OOR granted before issuing a final determination affirming the Coroner's rejection of the Request and concluding that the RTKL did not require immediate access to the manner of death. The OOR further took the opportunity to address a specific legal challenge advanced by Requester to its initial ruling. Specifically, Requester argued that under Section 305 of the RTKL all records in possession of a local agency are presumed to be public unless exempted by, *inter alia,* Section 708(b)(20). According to Requestor, although this section exempts a coroner's autopsy records, it also contains an exception to the exemption for "the reporting of the name of the deceased individual and the cause and manner of death." 65 P.S. § 67.708(b)(20). Based on this proviso, Requester argued that the report of the cause and manner of death is a public record subject to immediate disclosure under the RTKL.

Rejecting Requester's argument premised on Section 708(b)(20), the OOR found that immediate disclosure of cause and manner of death records under the RTKL would conflict with the year-end disclosure requirement in Section 1251 of the Coroner's Act. The OOR found a further conflict between immediate disclosure under the RTKL and Section 1236.1 of the Coroner's Act. Although the OOR recognized that Section 1236.1(c) provided an avenue to access the coroner's records at any time, it interpreted Section 1236.1(a) (authorizing the coroner to comply with "requests for examinations or other professional services" at the coroner's discretion) as also vesting discretion in the coroner as to whether to comply with

requests for the early release of records, for a fee, under Section 1236.1(c). Because it viewed Section 1236.1(c) as providing the coroner with discretion, it found that it was in conflict with the mandatory, immediate release authorized under the RTKL.

To resolve this perceived conflict, the OOR examined the conflict provision in Section 3101.1 of the RTKL. 65 P.S. § 67.3101.1 (directing that where there is a conflict between the RTKL and another law, the other law shall prevail). It held that Sections 1251 and 1236.1 of the Coroner's Act govern, and the RTKL merely provides a "vehicle" to obtain the Coroner's official records and papers after the Coroner has already deposited them with the prothonotary for public inspection in accord with Section 1251.

Requester appealed to the court of common pleas. After a hearing, the trial court affirmed the OOR. The court focused on the language of Section 708(b)(20) and held that the intent of this section was to exempt from the definition of public records all autopsy records except to the extent the coroner is already obligated under Section 1251 of the Coroner's Act to make its records available following the end of the year. The trial court read Section 708(b)(20) as specifically accounting for the year-end reporting obligation of the Coroner's Act rather than mandating immediate access to the cause and manner of death report.

The Commonwealth Court affirmed. *Hearst Television, Inc. v. Norris*, 8 A.3d 420 (Pa.Cmwlth.2010). It held that although the RTKL generally mandates immediate access to public records, it does not apply where it conflicts with another law. *See* 65 P.S. § 67.3101.1. Turning to the Coroner's Act, the Commonwealth Court, like the Coroner, read the year-end public reporting obligation in Section 1251 as conflicting with the right of immediate access arguably granted in the RTKL, such that the Coroner's Act would prevail. The Commonwealth Court interpreted Section 1236.1(a) as vesting discretion in the coroner with regard to whether to release written reports before January 30 of the following

year. In reaching its conclusion the Commonwealth Court relied on our decision in *Penn Jersey.*

In *Penn Jersey,* the issue before this Court was whether a coroner's autopsy report is an official record that must be deposited with the prothonotary in accord with Section 1251. Addressing the interplay between Section 1251 and Section 1236.1(c), we explained that under Section 1251, the records are not available for public inspection until the following year, while under Section 1236.1, a coroner may charge a fee for reports requested before January 30 of the following year. We concluded that Section 1236.1(c) provided a "rapid means" of obtaining an autopsy report from the coroner for those who did not want to wait until the record became available to the public after the end of the year. We made no mention of coroner discretion with regard to Section 1236.1(c).

Nevertheless, from this discussion in *Penn Jersey,* the Commonwealth Court held that a coroner's discretion under Section 1236.1(a) to entertain requests for examinations or services by other counties or persons extended to releasing reports for a fee under Section 1236.1(c). It further interpreted *Penn Jersey* as follows:

> [I]n interpreting Sections 1251 and 1236.1 of the Coroner's Act, the Supreme Court, in *Penn Jersey,* made clear that the information contained in an autopsy report—manner of death information—**is not available to the public until** the records are filed with the prothonotary thirty days after the end of the year in accordance with Section 1251, or prior to that time if a coroner uses his or her discretion to grant a request for rapid procurement under Section 1236.1.

*Hearst Television,* 8 A.3d 420 (emphasis in original). According to the Commonwealth Court, immediate access under the RTKL would conflict with the coroner discretion it found in Section 1236.1(c) of the Coroner's Act, causing the Coroner's Act to prevail over the RTKL. *See* 65 P.S. § 67.3101.1 (directing that where there is a conflict between the RTKL and another law, the other law shall prevail).

▉ We granted review of the following issues:

1. Whether the Commonwealth Court erred by applying a new lenient standard of "inconsistency" for determining when statutory provisions conflict (and thus may be denied effect) instead of the strict "irreconcilable" standard required by the Statutory Construction Act and precedents of this Court[?]

2. Whether the Commonwealth Court erred in its application of Penn *Jersey Advance, Inc. v. Grim,* 599 Pa. 534, 962 A.2d 632 (2009), citing it as precedent for finding conflict between the annual public filing requirement under the Coroner's Act and the Right–To–Know Law's requirement of immediate disclosure, when *Penn Jersey* reached a contrary conclusion, finding that the same annual filing requirement did not conflict with a statutory provision allowing immediate disclosure[?]

*Hearst Television, Inc. v. Norris,* 613 Pa. 218, 32 A.3d 1260 (2011). The issues presented involve statutory interpretation and are pure questions of law over which our standard of review is *de novo* and our scope of review is plenary. *See, e.g., Laird v. Dep't of Pub. Welfare,* 611 Pa. 138, 23 A.3d 1015, 1024 (2011).

██ Preliminarily, we observe that the parties do not argue that the issue is moot, and we conclude that it is not. Although the annual public reporting deadline of January 30, 2010, for all of the Coroner's 2009 official records and papers has passed, the issue raised is one of important public interest, is capable of repetition unless settled, and is apt to evade review. *Commonwealth v. Dixon,* 589 Pa. 28, 907 A.2d 468, 472–73 (2006).

The parties agree that cause and manner of death records are public records that must be disclosed to the public; they disagree about the timing of this obligation. Requester argues that the records are immediately available under Section 1236.1(c) of the Coroner's Act and Section 708(b)(20) of the RTKL, and asserts that the Commonwealth Court erred in finding a conflict between the Coroner's Act and the RTKL for five reasons. First, according to Requester, courts must construe statutes to avoid conflicts between statutory provi-

sions when possible. *See* 1 Pa.C.S. § 1933 ("Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail ..."). Requester argues that rather than construing the Coroner's Act and the RTKL together, the Commonwealth Court merely determined that there was a conflict, without determining whether the conflict was irreconcilable and whether the two statutes could be construed to give effect to both.

Second, Requester argues that it is certainly possible to construe the two statutes to give effect to both as there is no conflict between immediate disclosure under the RTKL and the annual filing requirement in Section 1251 of the Coroner's Act. Third, Requester finds nothing in Section 1236.1 of the Coroner's Act that gives the Coroner any discretion with respect to requests for the disclosure of records. Requester observes, correctly, that the only time the word discretion appears in Section 1236.1 is in subsection (a) in relation to deciding whether to comply with requests that the coroner undertake certain tasks, specifically, "examinations and other professional services." 16 P.S. § 1236.1(a). Requester argues that this subsection merely addresses autopsies and other medical examinations and related tests, not the disclosure of records. Rather, the subsection addressing the disclosure of records, Section 1236.1(c), authorizes the coroner to charge certain fees for disclosing its records. According to Requester, nothing in subsection (c) affords discretion over whether to release or withhold records.

Fourth, Requester argues that the Commonwealth Court's refusal to apply the RTKL based on a perceived conflict with the Coroner's Act makes little sense in this context where both statutes favor public disclosure. Fifth, Requester relies on this Court's decision in *Penn Jersey* as support for his position that he is entitled to immediate disclosure of the manner of death records. Specifically, Requester relies on our statement that there is no conflict between the year-end

reporting obligation of Section 1251 and the rapid access provision of Section 1236.1(c). *Penn Jersey,* 962 A.2d at 637 (recognizing that "[b]y the terms of Section 1251, the records that a coroner must deposit with the prothonotary are not available until thirty days after the end of each year, at which time interested persons may "inspect" such records," while "Section 1236.1 merely provides a rapid means of procuring an autopsy report for those who do not wish to wait until after the end of the year, and who are also willing to pay the charges associated with procuring it."). According to Requester, the Commonwealth Court turned this analysis on its head when it held that the rapid access contemplated in Section 1236.1(c) is subject to the coroner's discretion.

Finally, Requester addresses Section 708(b)(20) of the RTKL. Requester observes that in enumerating exemptions from public disclosure in Section 708(b), the General Assembly could have exempted all official papers and records of coroners, but, instead, it carefully crafted a narrow exemption to disclosure solely for autopsy reports and certain related audio and photographic records. The exemption specifically does not encompass cause and manner of death records, which, according to Requester, therefore remain public records subject to disclosure. Requester lastly observes that the Commonwealth Court's interpretation would create a *de facto* coroner's exemption from the RTKL, permitting coroners to respond to requests for records in an arbitrary manner through the exercise of unfettered discretion, immunized from the appeal and judicial review procedures of the RTKL.

Although the Coroner acknowledges that the manner of death records are available under the Coroner's Act, it responds to Requester's arguments by asserting that the Commonwealth Court did not err in finding a conflict between the RTKL and the Coroner's Act with regard to the timing of mandatory disclosure. It regards the conflict in the same manner as the Commonwealth Court did, premised on its view of that the only disclosure mandated by the Coroner's Act is the year-end filing requirement of Section 1251. The disclosure contemplated in Section 1236.1 is, according to the Coro-

ner, discretionary, as the discretion referenced in subsection (a) extends not only to deciding whether to undertake certain examinations and services, but also to releasing the information within the written report that was generated by those services. In this regard, the Coroner argues that a request for a report under subsection (c) is "in essence a request for the professional services of the coroner in written form" subject to the coroner's discretion. Brief of Coroner at 9. The Coroner asserts that, in contrast, the RTKL would provide immediate access to the cause and manner of death records. The Coroner acknowledges but does not address Section 708(b)(20) of the RTKL.

The Coroner continues that because the RTKL provides a general source of legislation, while the Coroner's Act provides special provisions with respect to the records of a coroner, the Coroner's Act controls. *See* 1 Pa.C.S. § 1933 (directing that if the conflict between a general provision and a special provision is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision). The Coroner finds further support in the conflict provision of the RTKL, *see* 65 P.S. § 67.3101.1.

Turning to our decision in *Penn Jersey,* the Coroner recognizes that under the Coroner's Act, an autopsy report is either available at the end of the year upon deposit with the prothonotary pursuant to Section 1251, or may be procured sooner, for a fee, in accord with Section 1236.1(c). Because *Penn Jersey* was not decided on the basis of the RTKL, however, the Coroner argues that it offers nothing to answer whether there is a conflict between the RTKL and the Coroner's Act.

The OOR filed a brief in support of the Coroner.[6] It argues that although the Statutory Construction Act provides guidance when courts are faced with statutes that irreconcilably conflict, *see* 1 Pa.C.S. §§ 1933–35, these statutory construction tools do not apply in the context of a conflict with the RTKL. Instead, the RTKL's own conflict provision, 65 P.S. 67.3101.1, applies, and directs that any conflict between the RTKL and

6. Although listed in the caption as a party to this case, the OOR has identified itself instead as *amicus curiae* pursuant to Pa.R.A.P. 531.

any other law must be resolved in favor of the other law. This conflict provision, according to the OOR, does not require that a conflict be irreconcilable in order to determine the precedence of other statutes over the RTKL. The OOR argues that by not requiring the conflict to be irreconcilable, the General Assembly demonstrated its intention to make the RTKL subservient to all other statutes regarding access to public records.

Concerning the purported conflict, the OOR agrees with the Coroner that immediate access under the RTKL would conflict the Coroner's Act, which it views as vesting discretion in the coroner with regard to requests for immediate access to records. The OOR explains that although Section 1236.1(c) does not use the word "discretion" with respect to reports, the discretion discussed in subsection (a) with regard to "requests for examinations or other professional services" also applies to subsection (c) because "where the coroner exercises the discretion to conduct an examination under Section 1236.1[ (a) ] of the Coroner's Act, the coroner, likewise, possess the discretion to release any reports issued in connection therewith. . . ." Brief of OOR at 18–19.

In interpreting the Coroner's Act and the RTKL, we are required to follow the rules of statutory construction, which direct that "[e]very statute shall be construed, if possible, to give effect to all of its provisions" and that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(a)-(b). *See also Scheipe v. Orlando,* 559 Pa. 112, 739 A.2d 475, 478 (1999). Under Section 1921(c) of the Statutory Construction Act, it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. *Sternlicht v. Sternlicht,* 583 Pa. 149, 876 A.2d 904, 909 (2005). Although the Statutory Construction Act sets forth rules for a court to follow when provisions in or among statutes are in conflict and cannot be reconciled, *see* 1 Pa.C.S. §§ 1933–1936, the RTKL itself has a conflict provision that provides that if the RTKL

conflicts with another law, "the provisions of [the RTKL] shall not apply." 65 P.S. § 67.3101.1.

■ As noted, the purported conflict at issue in this case is the Coroner's Act and the RTKL. The year-end reporting requirement of Section 1251 requires that the coroner's official records and papers to be deposited with the prothonotary by January 30 of the following year. Because Requester chose not to wait until January 30, 2010, to review the cause and manner of death records at issue, Section 1236.1 is implicated. Subsection (a) of this section vests discretion in the coroner to decide whether to comply with requests for examinations or professional services made by other counties or persons, and subsection (b) permits the coroner to establish fees for such examinations and professional services. The release of reports is addressed in subsection (c), which permits the coroner to establish fees for, specifically, autopsy reports, toxicology reports, inquisition or coroner's reports, and "other reports and documents requested by nongovernmental agencies," which includes cause and manner of death records. 16 P.S. § 1236.1(c).[7] There is no mention in Section 1236.1(c) of discretion. By its plain terms, therefore, and contrary to the Commonwealth Court's holding and the dissenting opinion, Section 1236.1(c) allows the coroner to charge fees for records, but does not afford the coroner any discretion with regard to releasing such records. The discretion afforded to the coroner to entertain requests for "examinations or other professional services" by "other counties or persons" in Section 1236.1(a) plainly provides coroners with a choice about whether to allocate staff and resources beyond the coroner's statutory duties in its own county. See e.g., 16 P.S. § 1237 (mandating investigations of the facts and circumstances of "deaths which appear to have happened within the county ...").

7. Incidentally, the fees collected for "examinations and professional services" and for various reports are not treated the same. While the fees collected pursuant to Section 1236.1(b) are paid into the county treasury as required by 16 P.S. § 1760, the fees collected pursuant to Section 1236.1(c) are paid into the treasury specifically "to defray the expenses involved in the county complying with the ... Coroners' Education Board Law [16 P.S. §§ 9525.1–9525.6]."

■ It is also relevant that the discretion afforded in Section 1236.1(a) relates to services requested by other counties or persons. There is no argument that the services rendered by the Coroner with regard to the Shippensburg student's death arose because of a request by another county or person or that the coroner had discretion regarding whether to determine the student's cause and manner of death; rather, the death occurred in the Coroner's county and implicated the Coroner's statutory obligations. Consequently, the arguments of the Coroner, the OOR, and the dissent, that because the coroner has discretion in Section 1236.1(a) to decide whether to perform services requested by other counties or persons, the coroner must also have discretion regarding whether to release the records associated with those services, are not persuasive in the context of this case.

Considering Sections 1236.1(c) and 1251 in *pari materia,* as we must pursuant to the Statutory Construction Act, 1 Pa.C.S. § 1932, the Coroner's Act provides two methods of public access: the coroner's year-end archiving of all "official records and papers" with the prothonotary, in accord with Section 1251, or rapid access for those who do not wish to wait and are willing to pay a fee, in accord with Section 1236.1(c). Indeed, we have already said as much in *Penn Jersey,* where, in the course of addressing what records must be deposited with the prothonotary following the end of the year in accord with Section 1251, we held that the autopsy reports in dispute in that case were not available "[b]y the terms of Section 1251" until they are filed with the prothonotary. By the terms of Section 1236.1(c), however, the same records are rapidly available for a fee "for those who do not wish to wait until after the end of the year, and who are also willing to pay the charges associated with procuring it." *Penn Jersey,* 962 A.2d at 637.

Respectfully, we believe the Commonwealth Court and the dissent have misconstrued *Penn Jersey* as supporting its importation of "discretion" from Section 1236.1(a) to Section 1236.1(c). In our interpretation of Section 1236.1(c) as coexisting without conflict with Section 1251, and as providing a rapid means of access to the coroner's records, we did not recognize

any discretion in the coroner. Contrary to the dissent's assertion, we did not conclude that Section 1236.1 gave the coroner discretion to release information sooner than the annual disclosure requirement. Dissenting Op. at 620–21, 53 A.3d at 34–35.

Moreover, as discussed above, the RTKL generally presumes that a record in the possession of a local agency is a public record, *see* 65 P.S. § 67.305, and defines a public record as "a record . . . of a local agency that . . . is not exempt under Section 708 . . ." or otherwise privileged. 65 P.S. § 67.102. Section 708(b)(20) exempts a coroner's autopsy records from the definition of public record and the presumption, but provides that "[t]his exception shall not limit the reporting of the name of the deceased individual and the cause and manner of death." By omitting the last sentence of Section 708(b)(20) the General Assembly could have exempted all coroner's records from disclosure under the RTKL, but instead it added the proviso, indicating its intent not to limit the coroner's reporting obligation with regard to the name of the deceased and the cause and manner of death. The Commonwealth Court did not give effect to the language of this section.

 Accordingly, the RTKL and Section 1236.1(c) of the Coroner's Act each provide immediate access to cause and manner of death records. The RTKL provides the procedure for accessing those records that are available for immediate release for a fee pursuant to Section 1236.1(c). Additionally, consistent with the RTKL, Section 1236.1(c) authorizes the coroner to charge limited fees for such records. *See* 65 P.S. § 67.1307(c) ("An agency may impose reasonable fees for official certification of copies if the certification is at the behest of the requester and for the purpose of legally verifying the public record."); *id.* § 67.1307(g) ("Except as otherwise provided by statute, no other fees may be imposed unless the agency necessarily incurs costs for complying with the request, and such fees must be reasonable. No fee may be imposed for an agency's review of a record to determine whether the record is a public record, legislative record or financial record subject to access in accordance with this act."). Because the requested record is not exempt from

disclosure under the RTKL, it must be provided to Requester consistent with Section 1236.1(c). The order of the Commonwealth Court is reversed.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices SAYLOR, TODD and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I respectfully dissent from the majority's finding there is no conflict between the sections of the Coroner's Act and the Right to Know Law at issue here, and from its conclusion the requested record in this case is not exempt from disclosure under the RTKL. I would hold § 1236.1(c) of the Coroner's Act gives the coroner discretion concerning whether to release a written report regarding cause and manner of death prior to the statutorily-mandated time period in § 1251, and therefore conflicts with § 708(b)(20) of the RTKL, which provides cause and manner of death reports are not exempt from the Act's access requirements. Because of this conflict, the Coroner's Act provisions control, and the requested record is exempt from disclosure under the RTKL. *See* 65 P.S. § 67.3101.1 (stating if RTKL's provisions regarding access to records conflict with any other federal or state law, RTKL's provisions shall not apply).

The Coroner's Act provides two means of obtaining a report concerning the cause and manner of death. Under § 1251, a coroner is required to deposit all official records from the preceding year with the prothonotary by January 30 of the following year for inspection by any interested persons. 16 P.S. § 1251. Under § 1236.1(a), compliance with "[r]equests for examinations or other professional services [made] by other counties or persons," apart from the inspection of records permitted under § 1251, is left to a coroner's discretion. *Id.,* § 1236.1(a). Section 1236.1(c) permits a coroner to charge

a fee for such "other reports and documents requested by nongovernmental agencies." *Id.*, § 1236.1(c).

Unlike the majority, I do not read § 1236.1(a)'s reference to discretion as solely applicable to that subsection; reading § 1236.1 as a whole, I would conclude subsection (a) bestows the discretion, and subsection (c) permits a coroner to charge a fee for his discretionary release of reports prior to the time mandated in § 1251. A majority of this Court concluded as much in *Penn Jersey Advance, Inc. v. Grim,* 599 Pa. 534, 962 A.2d 632 (2009). In *Penn Jersey,* the issue was whether a coroner's autopsy report is an "official" record within the meaning of § 1251 and thus subject to that section's mandatory annual disclosure requirement. *Id.*, at 637. In holding such a report constitutes an official record under the statute, we rejected the notion there was a conflict between § 1251, which allows access to autopsy reports free of charge if they are deemed "official" records, and § 1236.1(c), which allows a coroner to charge for autopsy reports. We noted § 1251 bears a time requirement, and observed § 1236.1(c) does not contain such a requirement. Accordingly, we concluded, "Section 1236.1 merely provides a rapid means of *procuring* an autopsy report for those who do not wish to wait until after the end of the year, and who are also willing to pay the charges associated with procuring it." *Penn Jersey,* at 637 (emphasis in original).[1]

Although the analysis in *Penn Jersey* was focused on the "official" nature of autopsy reports and did not involve the RTKL, the conclusion that §§ 1251 and 1236.1 do not conflict is instructive: the majority interpreted § 1236.1 as a faster means of obtaining the same information mandated to be disclosed under § 1251. The fact that "discretion" was articulated in subsection (a) but not subsection (c) was not determinative; the Court read the section in its entirety and concluded it gives a coroner discretion to release information sooner

---

1. This author filed a concurring and dissenting opinion, agreeing with the conclusion that §§ 1251 and 1236.1 do not conflict, but disagreeing that all autopsy reports are part of a coroner's official records requiring annual filing and disclosure. *Penn Jersey,* at 638–39 (Eakin, J., concurring and dissenting).

than the annual disclosure, coupled with the ability to charge a fee for such rapid disclosure.

Thus, I agree with the Commonwealth Court's interpretation of *Penn Jersey,* and with its conclusion that immediate access under the RTKL would conflict with a coroner's discretion in § 1236.1(c) of the Coroner's Act. *See Hearst Television, Inc. v. Norris,* 8 A.3d 420, 427 (Pa.Cmwlth.2010) ("[I]t would be inconsistent with Section 1236.1 of the Coroner's Act, which gives a coroner discretion regarding whether to release cause of death information before being required to do so under the Coroner's Act, to require a coroner to immediately release that same information upon request under the RTKL.").

Having found a conflict between the RTKL and §§ 1236.1 and 1251 of the Coroner's Act, I would further conclude this conflict is sufficient to trigger the RTKL's conflict provision. Requester contends the Commonwealth Court applied a new lenient standard of "inconsistency" instead of the "irreconcilability" required by the Statutory Construction Act. *See* 1 Pa.C.S. § 1933 (when general provision in statute "conflicts with a special provision in the same or another statute, the two shall be construed, if possible, so effect may be given to both; if conflict between two provisions is irreconcilable, the special provisions shall prevail"). Here, the Coroner's Act only requires disclosure of cause and manner of death reports by a coroner once a year; earlier disclosure is discretionary with the coroner. The provision of the RTKL requiring immediate disclosure of such reports upon request is thus not reconcilable with the Coroner's Act. Accordingly, the Commonwealth Court did not create a new, more lenient standard; it properly concluded the two provisions were contradictory, and as such, the RTKL does not apply.

For these reasons, I would affirm the decision of the Commonwealth Court.