J-A12041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINA MARIE COSTANZO CLARK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL JOHN CLARK | : | |
| | : | No. 2805 EDA 2024 |
| Appellant | | |

Appeal from the Order Entered October 4, 2024
In the Court of Common Pleas of Delaware County
Civil Division at No(s): CV-2017-002435

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED JULY 22, 2025**

Michael John Clark ("Father") appeals *pro se* from the order finding him in contempt of a custody order. We affirm.

Father and Christina Marie Costanzo Clark ("Mother") are divorced and have three children, of whom J.C. ("Child") (born in January 2014), is the youngest. In January 2020, Father and Mother entered into an agreed custody order that recognized their shared legal custody of all of their children ("the 2020 agreed custody order"). **See** Agreement & Order in Custody, 1/28/20, at ¶ 1. Father and Mother agreed to "consult with each other regarding selection of any healthcare (including mental health) providers and [that] neither party may select a healthcare provider without the other party's consent[.]" **Id**. at ¶ 1(d). The 2020 agreed custody order further provided Child would "complete his cycle of therapy towards increased his self-esteem,

attention, and behavioral control with Dr. Jo Ann Cohen, PhD. [("Dr. Cohen")], as she recommends[.]" *Id*. at ¶ 16.

In June 2023, Father and Mother discussed whether Dr. Cohen should continue treating Child, and, in October 2023, Father asked Dr. Cohen for a treatment plan for Child. *See* N.T., 5/22/24, at 39-41; Trial Ct. Op., 12/6/24, at 4-5. Child's treatment with Dr. Cohen continued after Mother and Father discussed these issues with Dr. Cohen. *See* N.T., 5/22/24, at 39-41; Trial Ct. Op. at 4-5. In February 2024, Father filed a petition to modify custody, asserting, in relevant part, that Mother continued to schedule Child's sessions with Dr. Cohen over his objections, and Dr. Cohen had not provided him with a written treatment plan for Child. *See* Pet. to Modify, 2/7/24, at ¶ 7.[1] On March 18, 2024, Father sent the following email to Dr. Cohen, which he copied to Mother:

> Good evening. It's my understanding that Dr. Cohen was disciplined by the Pennsylvania Board of Psychology [("the Board")] and is showing as active on probation. Therefore, *I'm cancelling all of my [Child's] appointments immediately and there should not be any further appointments scheduled* . . . . Thank you.

Pet. for Contempt in Custody, 3/28/24, at Ex. B (emphasis added). On March 28, 2024, Mother filed a petition for contempt in custody, asserting Father's

---

[1] Although Father titled his filing as a petition to modify custody, Father requested that the court direct Mother to comply with the terms of the 2020 agreed custody order and honor the legal custody provisions of that order. *See* Pet. to Modify Custody, 2/7/24, at *ad damnum* cl.

unilateral cancellation of Child's sessions with Dr. Cohen violated the 2020 agreed custody order. *See id*. at ¶¶ 8-10.

In April 2024, Father and Mother reached an agreement to amend the 2020 agreed custody order to allow them to seek a new therapist for Child ("the 2024 agreement").[2]  Father subsequently filed an answer to Mother's contempt petition.  Father admitted he cancelled Child's sessions with Dr. Cohen.  Answer, 4/18/24, at ¶ 8.  Father explained he withdrew his consent to Dr. Cohen's treatment of Child because Dr. Cohen had not responded to his requests for a treatment plan, and he later discovered the Board had taken disciplinary actions against her.  *See id*. at ¶¶ 8-9.  Father admitted that he refused Mother's counsel's request to retract the unilateral cancellation of Child's counseling.  *See id*. at ¶ 10.  Father claimed that he "exercised his legal right" to withdraw his consent to Child's treatment based on "Act 65," which governs the mental health treatment of minors, and that Mother did not object and could not interfere with his decision.  *Id*. at ¶¶ 8-9; *see also* Act of Jan. 24, 2005, P.L. 647, No. 65, § 1 (eff. Sept. 2020) (amending 35 P.S. § 10101.1).  Additionally, Father asserted Mother should have withdrawn the petition for contempt because she did not object to his decision to cancel Child's sessions with Dr. Cohen and later consented to the 2024 agreement to seek a new therapist for Child.  *See id*.

---

[2] The trial court entered a temporary custody order incorporating the 2024 agreement to seek a new therapist for Child.  *See* Temporary Custody Order, 4/30/24, at 4.

- 3 -

In May 2024, the trial court held a hearing on the contempt petition at which counsel for Mother and Father appeared. Mother briefly testified, but Father did not testify.[3] Mother and Father filed post-hearing memorandums of law.

On October 4, 2024, the trial court entered an order granting Mother's petition for contempt and directing Father to pay Mother $250. Father timely appealed, and Father complied with the order to file a Pa.R.A.P. 1925(b) statement.[4]

Father raises the following issues for our review:

A. Whether the trial court erred as a matter of law or abused its discretion in granting [Mother's] petition for contempt and holding Father . . . in contempt when Act 65 authorized Father to withdraw his consent for mental health treatment for [Child] upon finding out Dr. . . . Cohen was disciplined by the Pennsylvania Board of Psychology and was on probation.

B. Whether the trial court erred as a matter of law or abused its discretion in . . . holding Father . . . in contempt when there was no evidence proving Father acted with wrongful intent.

_____

[3] Mother's testimony at the hearing was cut short by objections and lengthy legal arguments concerning Father's defenses to the contempt petition. **See, e.g.**, N.T., 5/22/24, at 44-67. At the conclusion of the hearing, the trial court ordered post-hearing memorandums of law. Father did not raise issues concerning the truncated presentation of Mother's evidence at the hearing, and his post-hearing memorandum of law focused on the defenses outlined in his answer rather than the evidence presented at the hearing. **See id**. at 74-77; Mem. of Law in Opp'n, 6/21/24, unnumbered at 5-6. Under these circumstances, it is apparent that Mother, Father, and the trial court relied on the admissions in the pleadings on which Mother and Father requested legal determinations as to whether Father was in contempt.

[4] Father's counsel withdrew after filing the notice of appeal, and Father filed the Rule 1925(b) statement *pro se*.

C. Whether the trial court erred as a matter of law or abused its discretion in . . . holding Father in contempt, when the order was moot since the parties had already agreed to [the 2024 agreement] allowing [Child] to seek mental health treatment with a new therapist.

Father's Br. at 4-5 (some capitalization omitted).

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion.  This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." **P.H.D. v. R.R.D.**, 56 A.3d 702, 706 (Pa. Super. 2012) (internal citation and quotation marks omitted).  Where the issue presented involves a question of law, an appellate court's standard of review is *de novo*, and the scope of review plenary.  **See Thompson v. Thompson**, 223 A.3d 1272, 1277 (Pa. 2020).

As this Court has stated:

To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Stahl v. Redcay**, 897 A.2d 478, 489 (Pa. Super. 2006) (internal citation and indentation omitted).

In his first issue, Father claims the trial court erred in finding him in contempt when he exercised his legal right under Act 65 to end Child's mental health treatment with Dr. Cohen.  **See** Father's Br. at 11-19.  Father contends there is a conflict between Act 65 and Child Custody Act, 23 Pa.C.S.A.

- 5 -

§§ 5321-5339, which the trial court should have reconciled in favor of Act 65. *See id*. at 13.

When interpreting allegedly conflicting statutory provisions, a court must apply the principles of statutory construction that "[e]very statute shall be construed, if possible, to give effect to all of its provisions" and "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Hearst Television, Inc. v. Norris*, 54 A.3d 23, 31 (Pa. 2012) (internal citations omitted). Moreover:

> [w]henever a general provision in a statute shall be in conflict with a special provision in . . . another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933.

Act 65 provides, in relevant part, that "[a] parent or legal guardian of a minor less than eighteen years of age may consent to . . . outpatient mental health treatment on behalf of the minor, and the minor's consent shall not be necessary." 35 P.S. § 10101.1(a)(1). When a minor is under fourteen, as was Child in this matter, section 10101.1(a)(4) states:

> A parent or legal guardian who has provided consent to . . . outpatient mental health treatment under paragraph (1) may revoke that consent, which revocation shall be effective unless the minor who is fourteen to eighteen years of age has provided

consent for continued voluntary inpatient or outpatient mental health treatment.

35 P.S. § 10101.1(a)(4).

The Child Custody Act provides that a trial court may award shared legal custody if it is in the best interest of a child. *See* 23 Pa.C.S.A. § 5323(a). Section 5322 defines "[l]egal custody" as "[t]he right to make major decisions on behalf of the child, including . . . medical . . . decisions[,]" and "[s]hared legal custody" means "[t]he right of more than one individual to legal custody of the child." 23 Pa.C.S.A. § 5322. "[T]he concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute." *B.S.G. v. D.M.C.*, 255 A.3d 528, 534 (Pa. Super. 2021) (internal citation omitted). "A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa.C.S.A. § 5323(g)(1).

Father argues the trial court failed to engage in a proper statutory analysis of section 10101.1(a)(4) as authorizing him to withdraw consent to Dr. Cohen's treatment of Child. *See* Father's Br. at 11. Father contends that "there is clearly a conflict between the parents' legal decision-making capability under the Child Custody Act and the right for one parent to withdraw their consent for mental health treatment for minors under the age fourteen." *Id*. at 13. Father asserts that the trial court's decision to hold him in contempt for exercising his rights under section 10101.1(a)(4) constitutes an absurd result that contravenes the General Assembly's intent when enacting Act 65. *See id*. at 13, 15, 18-19. Father concludes that as matter of statutory

construction, the more recent and more specific statute, Act 65 permitted him to end Child's sessions with Dr. Cohen, without regard for the provisions of the Child Custody Act or the 2020 agreed custody order requiring shared legal custody. *See id*. at 9, 11, 13.

The trial court rejected Father's arguments and determined that Act 65 did not override the shared legal custody provisions of the 2020 agreed custody order. *See* Trial Ct. Op. 12/6/24, at 11. The court opined that while a parent may avail themselves of the rights enumerated in Act 65 and object to treatment, Father could not willfully disobey a court order when so doing. *See id*. at 12.

We discern no error of law in the trial court's conclusion. Act 65 delineates the rights of minors vis-à-vis their parents in seeking mental health treatment for a minor. *See* 35 P.S. §§ 10101.1(a)(1), (4) (providing that where a parent consents to outpatient mental health treatment, the consent of the minor is not necessary; providing, further, that while a parent's revocation of consent is effective for a minor under fourteen, the revocation of consent is not effective if a minor fourteen or older consents to the treatment). By contrast, the Child Custody Act authorizes a court to resolve disputes *between parents*. *See* 23 Pa.C.S.A. § 5323(a); *cf. Ellerbe v. Hooks*, 416 A.2d 512, 513 (Pa. 1980) (noting three types of custody disputes: those between parents; those between a parent or parents and the state; and

those between a parent or parents and a third party).[5] Act 65 and the Child Custody Act address separate subject matters, and they may be read *in pari materia* without conflict concerning the different issues and disputes they govern.

Here, Father consented to shared legal custody of Child under the 2020 agreed custody order. Father does not dispute that shared legal custody required him to attempt to reach an agreement with Mother, or in the case of an impasse, turn to the trial court to decide their impasse. **See** Father's Br. at 14 (citing **S.W.D. v. S.A.R.**, 96 A.3d 396, 404 (Pa. Super. 2014)). Indeed, Father acknowledges that allowing one parent to exercise final authority in the event of a dispute is antithetical to shared legal custody. **See id**. Even had Act 65 vested Father with a unilateral right to end Child's treatment with Dr. Cohen (it did not), that alleged right would not have absolved him of his obligations under the 2020 agreed custody order to respect Mother's shared legal custody. In short, Father conflates what he did, *i.e.*, ending Child's sessions with Dr. Cohen, with how he did it, unilaterally, and without prior consultation with or agreement from Mother. **See Rogowski v. Kirven**, 291 A.3d 50, 59 (Pa. Super. 2023) (noting that a finding of contempt of an order

---

[5] To the extent Act 65 addresses disputes between parents, it provides that another parent "may not abrogate consent provided by a parent" on the minor's behalf. **See** 35 P.S. § 10101.1(a)(3). With respect to **inpatient** mental health treatment, which is not at issue here, Act 65 permits a "nonconsenting parent," who has legal custody rights to a minor, to object to such treatment by filing a petition in the court of common pleas. **See** 35 P.S. § 10101.1(a)(10).

shared legal custody in religious matters did not restrict a mother's decision to baptize a child but sanctioned her unilateral decision to have the child baptized). Thus, Father's assertions that the finding of contempt constitutes an absurd result, or that Act 65 and the Child Custody Act irreconcilably conflict, merit no relief.

In his second issue, Father asserts there was no evidence of his wrongful intent. *See* Father's Br. at 19-27.

As noted above, the Child Custody Act authorizes a court to adjudge in contempt "[a] party who willfully fails to comply with any custody order," 23 Pa.C.S.A. § 5323(g)(1). Wrongful intent, as an element of contempt, can be imputed" to a defendant by virtue of the "substantial certainty" that his actions "will violate the court order." *Gross v. Mintz*, 284 A.3d 479, 493 (Pa. Super. 2022) (internal citation a omitted). "[W]hen making a determination regarding whether a defendant acted with wrongful intent, the [trial] court should use common sense and consider context[.]" *Id*. at 492-93 (internal citation and quotation marks omitted).

Father contends the trial court misapprehended the elements of contempt and never found wrongful intent. *See* Father's Br. at 24-26. Moreover, Father contends Mother was required to establish his wrongful intent by proving he acted over her objections or engaged in deception when canceling Child's sessions with Dr. Cohen. *See id*. at 20-21. Father insists he cannot be held in contempt because his email cancelling Child's sessions with Dr. Cohen, which he copied to Mother, was "transparent," Mother did not

object to his email, and Mother ultimately agreed to find a new therapist for Child. *See id*. at 22-23, 26-27.

At the outset, we note that Father's claim that the trial court did not address the element of "wrongful intent" is somewhat duplicitous. In his Rule 1925(b) statement, Father framed the issue as, "Whether the trial court erred as a matter of law or abused its discretion in granting [Mother's] petition for contempt . . . when there was **no willful misconduct** by [Father]." Father did not allege the absence of evidence concerning his "wrongful intent." Father's Rule 1925(b) Statement, 11/12/24, at 1-2. In response, the trial court authored its opinion focusing on Father's **willful misconduct** and found Father ended Child's sessions with Dr. Cohen without Mother's consent or approval. *See* Trial Ct. Op., 12/6/24, at 13-15. The court then concluded:

> [Father] **willfully** violated the joint legal custody provision of the [the January 2020 agreed custody order] when he unilaterally terminated treatment for [Child] with [Dr. Cohen] by [e]mail to her, dated March 18, 2024[,] and stated that he exercised his legal right to terminate Dr. Cohen admitting that he made the decision himself without regard for [Mother's] opinion and without her input.

*Id*. at 15 (emphasis in original). Accordingly, we could find Father's issue concerning "wrongful intent" waived because he failed to properly preserve it in his Rule 1925(b) statement, *see* Pa.R.A.P. 1925(b)(4)(vii); however, we decline to do so in this case.

Following our review, we conclude Father's arguments lack merit. Father concedes that he had notice of the 2020 agreed custody order and does not dispute that the requirement for shared legal custody was definite, clear,

and specific. He further does not dispute that his conduct was volitional. Father appears to assert that he had reasonable grounds to cancel Child's sessions with Dr. Cohen and that Mother did not prove he acted with ill will, in a deceptive manner, or in open defiance of the court. **See** Father's Br. at 19-27. However, these arguments lack support, particularly where the primary issue before the trial court was whether Father failed to honor the 2020 agreed custody order for shared legal custody and to have Child complete a cycle of therapy with Dr. Cohen as she recommended. **See** Agreement & Order in Custody, 1/28/20, at ¶¶ 1, 16. Here, the trial court was entitled to impute wrongful intent based on the substantial certainty that Father's unilateral cancellation of Child's sessions with Dr. Cohen would violate the shared legal custody provisions of the 2020 agreed custody order. **See Gross**, 284 A.3d at 492-93. Having reviewed Father's answer to the contempt petition, in which he admitted he unilaterally cancelled Child's sessions with Dr. Cohen, and refused Mother's request to withdraw the cancellation, we discern no basis to conclude the trial erred in imputing to Father the requisite wrongful intent. Accordingly, Father's second issue fails.

In his third issue, Father asserts the trial court erred in rejecting his claim that the 2024 agreement, under which Mother consented to find a new therapist for Child, rendered Mother's petition for contempt moot. **See** Father's Br. at 26-28.

"As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. . . . An issue before

a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." ***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*) (internal citations and quotation marks omitted). Mootness may arise from intervening changes in fact or law which deprive a litigant of a necessary stake in the outcome. ***See id***. A claim that an issue is moot presents a question of law over which our standard of review is *de novo*, and our scope of review is plenary. ***See Crespo v. Hughes***, 292 A.3d 612, 617 (Pa. Super. 2023).

Father contends that once Mother agreed to seek a new therapist for Child, she no longer had standing to pursue her petition for contempt and his revocation of consent to Dr. Cohen's treatment of Child was moot. ***See*** Father's Br. at 30.

The trial court rejected Father's issue. The court explained that Father unilaterally canceled all of Child's appointments with Dr. Cohen when the 2020 agreed custody order was in full force and effect. ***See*** Trial Ct. Op., 5/22/24, at 19. The court concluded that after Father unilaterally canceled all further treatment with Dr. Cohen, Mother had no choice but to find a new therapist in order for the minor child to continue his mental health therapy. ***See id***.

Following our review, we agree with the trial court that Father's mootness issue lacks merit. As noted by the trial court, there was no dispute that when Father cancelled Child's sessions with Dr. Cohen when the January 2020 agreed custody order was in effect and required shared legal decision making. That Mother ultimately agreed to select a new therapist after Father

terminated Dr. Cohen's services, did not divest Mother of standing to allege Father's unilateral cancellation of Child's sessions with Dr. Cohen constituted a violation of the shared legal custody provision of the 2020 agreed custody order in effect at the time. Furthermore, the controversy here was not whether Dr. Cohen should, or should not, counsel Child; rather, it was whether Father's unilateral cancellation of Child's sessions with Dr. Cohen violated the 2020 agreed custody order. *See Rogowski*, 291 A.3d at 59. This is not a case where the alleged changed circumstances required the trial court to render an advisory opinion, and the trial court's order finding Father's action in contempt of the 2020 agreed custody order has full legal force and effect. Thus, we conclude the mootness doctrine does not apply, and Father's final issue merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2025

- 14 -