J. S84039/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| REAFEAL FIELDS, | : | No. 366 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, December 29, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0014201-2010

BEFORE:  BENDER, P.J.E., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:              **FILED MAY 20, 2019**

Reafeal Fields appeals from the December 29, 2017 order entered by the Court of Common Pleas of Philadelphia County denying relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The PCRA court provided the following synopsis of the relevant factual history:

> Timothy Johnson ("Johnson") arrived at the Ridge Food Market . . . at 10:43 AM on February 11, 2010. When he arrived he saw two men, whom he knew as June and Shiz, on the corner.  Johnson started walking down the street toward 26th Street and then heard about three gunshots.  He turned around and saw the decedent, a friend of his, lying on the ground and June and Shiz running away.  Johnson identified June and Shiz as [Kelvin] Bryant and [appellant], respectively.

Philadelphia Police Officer Patrick Gereaghty ("Officer Gereaghty") arrived first at the scene, where he found the decedent face-down in the snow and unresponsive. Officer Gereaghty transported him to Temple University Hospital, where he was pronounced dead at 2:31 PM.

Both [appellant] and Bryant later told Amin Payne ("Payne") that they had killed the decedent. [Appellant] and Bryant told Payne that after they had spoken with Johnson outside the store, they had killed the decedent over drug territory: "They did not want him selling drugs on Bailey Street." [Appellant] and Bryant told Payne that Bryant had used his 9mm and that [appellant] had used a .38 caliber revolver.

Later that evening, Bryant and [Milique] Wagner were inside Bryant's mother's apartment with Payne and Herman Adams ("Adams"), where they were heat-sealing bags of drugs. Bryant received a phone call, and he and Wagner went outside. A short time later, Payne looked out the window and, not seeing Bryant and Wagner, went outside and looked down the street. He saw Bryant and Wagner at the corner of 25th Street and Cecil B. Moore Avenue speaking with King and then saw them "just pull out on the boy and shoot him up." The two then ran down the street and turned up 26th Street. Adams testified at trial that he heard the gunshots about ten minutes after Bryant and Wagner had left the apartment. Bryant called Payne thirty minutes later and told him, "I had to holler at another one." A few days later, Bryant told Payne, "I killed the one, I might as well get the rest. I got to get them out of the way."

At the scene, police recovered a sandwich bag containing four smaller ziplock bags, each containing a green, leafy substance, and two heat-sealed bags containing an off-white, chunky substance. Police Officer Flade testified that, in his experience, the substances appeared to be marijuana and crack cocaine. Twenty-seven cartridge casings were also

found, all fired from two 9mm semi-automatic handguns.

All three defendants left Philadelphia after February 11, 2010 and were arrested outside the county. Detective James Burke ("Detective Burke") testified that on February 20, 2010, he went to 1712 North Marston Street in Philadelphia, where he found Nikki Williams ("Williams"), [appellant's] girlfriend and mother of his children. [Appellant] resided at that location, but was not there. Detective Burke told Williams that [appellant] was wanted, and that he should call Detective Burke or turn himself in to police. Ultimately, Detective Burke found [appellant] at a house in Norristown, Pennsylvania on March 3, 2010. When he was arrested, [appellant] gave 1712 North Marston Street as his address.

PCRA court opinion, 6/19/18 at 3-5 (footnotes and citations to the record omitted).

The PCRA court also summarized the following procedural history:

On February 6, 2013, following a jury trial before [the trial court, appellant] was found guilty of murder of the first degree, criminal conspiracy, and possessing instruments of crime.[Footnote 2] That same date, [the trial court] sentenced [appellant] to the mandatory term[Footnote 3] of life imprisonment for murder of the first degree.[Footnote 4] On February 19, 2013, [appellant] filed post-sentence motions, which [the trial court] denied on May 21, 2013. On May 29, 2013, [appellant] appealed his judgment of sentence to [the] Superior Court, and, on February 6, 2015, [the] Superior Court affirmed the judgment of sentence. [Appellant] did not seek further appellate review, therefore, his judgment of sentence became final on March 9, 2015, at the expiration of the period for filing a Petition for Allowance of Appeal. 42 Pa.C.S.[A.] § 9545(b)(3) (a judgment of sentence becomes final "at the conclusion of direct review, including discretionary

review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.").

> [Footnote 2] 18 Pa.C.S.[A.] §§ 2502(a), 903, and 907(a), respectively.
>
> [Footnote 3] 18 Pa.C.S.[A.] § 1102(a)(1).
>
> [Footnote 4] As to the remaining charges, [the trial court] imposed concurrent sentences as follows: as to the conviction for criminal conspiracy, [the trial court] sentenced [appellant] to a term of not less than five years nor more than ten years['] confinement; as to the conviction for PIC, [the trial court] sentenced petitioner to a term of not less than one year nor more than five years['] confinement.

[Appellant] filed the instant timely counseled PCRA petition on March 7, 2016. Following several continuance requests by counsel in order to supplement and amend [appellant's] claims, counsel filed an amended petition on February 10, 2017. After several requests by the Commonwealth for additional time to respond, the Commonwealth filed a motion to dismiss on September 1, 2017. Following a review of the pleadings, [the PCRA court] found that [appellant's] claims lacked merit, and, on November 28, 2017, provided [appellant] a notice pursuant to Pa.R.Crim.P. 907 (["]907 Notice["]) of its intent to deny his claims and dismiss his petition without a hearing. [Appellant] did not respond to the 907 Notice. Therefore, on December 29, 2017, [the PCRA court] dismissed [appellant's] petition consistent with the 907 Notice. This timely appeal followed.

*Id.* at 1-2 (citations to exhibits omitted; additional footnotes omitted).

The PCRA court ordered appellant to file a concise statement of errors complained of on appeal pursuant to a Pa.R.A.P. 1925(b). Appellant complied. The PCRA court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

> [I.] [Whether] [t]he PCRA court erred because the record supported [appellant's] trial counsel ineffectiveness claim regarding trial counsel's failure to consult with [appellant] about the possibility of requesting DNA testing on the black knit hat collected near the shooting scene and subsequently requesting the discussed DNA testing[?]
>
> [II.] [Whether] [t]he PCRA court erred because the record supported [appellant's] trial counsel ineffectiveness claim regarding trial counsel's failure to object to the trial court's flight instruction as it related to [appellant?]
>
> [III.] [Whether] [t]he PCRA court erred because the record supported [appellant's] appellate counsel ineffectiveness claim regarding appellate counsel's failure to raise, brief, and argue the record-based claim that the trial court erred by refusing to issue a **Kloiber** instruction in connection with Timothy Johnson's identification[?]
>
> [IV.] [Whether] [t]he PCRA court erred because the record supported [appellant's] cumulative prejudice claim[?]

Appellant's brief at 3-4 (citations omitted).

PCRA petitions are subject to the following standard of review:

> "[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the

> PCRA court are supported by the record and free of legal error." **Commonwealth v. Dennis**, [] 17 A.3d 297, 301 ([Pa.] 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. **Id.**, at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one of more of the errors enumerated in 42 Pa.C.S.[A.] § 9543(a)(2); (2) his claims have not been previously litigated or waived, **id.**, § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[,]" **id.**, § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" **Id.**, § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." **Id.**, § 9544(b).

**Commonwealth v. Treiber**, 121 A.3d 435, 444 (Pa. 2015).

On appeal, appellant alleges ineffective assistance of counsel by both his trial counsel and his counsel on direct appeal. Under the PCRA, an individual is eligible for post-conviction relief if the conviction was the result of "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering whether counsel was ineffective, we are governed by the following standard:

> [C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. ***Strickland v. Washington***, 466 U.S. 668 [] (1984). This Court has described the ***Strickland*** standard as tripartite by dividing the performance element into two distinct components. ***Commonwealth v. Pierce***, [] 527 A.2d 973, 975 ([Pa.] 1987). Accordingly, to prove counsel ineffective, the petitioner must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. ***Id.*** A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.

> ***Commonwealth v. Busanet***, [] 54 A.3d 34, 45 ([Pa.] 2012) (citations formatted). Furthermore, "[i]n accord with these well-established criteria for review, [an appellant] must set forth and individually discuss substantively each prong of the [***Pierce***] test." ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 910 (Pa.Super. 2009).

***Commonwealth v. Perzel***, 116 A.3d 670, 671-672 (Pa.Super. 2015), ***order vacated on other grounds***, 166 A.3d 1213 (Pa. 2017).

## I.

First, appellant contends that his trial counsel, Andres Jalon, Esq., rendered ineffective assistance because he did not request pretrial DNA testing of a black knit hat found at the scene of the shooting. Specifically,

appellant argues that the black knit hat "could possibly provide exculpatory information if subjected to DNA testing." (Appellant's brief at 8.) Appellant further argues that his claim has arguable merit because "the gunman's identity was at issue." (*Id.* at 11.)

In his argument, appellant relies on our supreme court's decision in *Commonwealth v. Williams*, 899 A.2d 1060 (Pa. 2006). In *Williams*, the court determined that the defendant's PCRA claim had arguable merit because the DNA testing at issue would have challenged the victim's identification of the defendant. *Id.* at 1064. *Williams*, however, is distinguishable from the case presently before us. The victim in *Williams* was raped four times and the defendant alleged ineffective assistance of counsel for failing to request DNA testing. *Id.* at 1062. The DNA testing at issue in *Williams* had the ability to "settle whether there will be a conviction or not. It [could have] demolish[ed] the prosecution's case, [or] it [could have] cast it in concrete as well." *Id.* The PCRA court concluded that the DNA testing at issue here would not have been as conclusive as the DNA in *Williams*.

Indeed, as the PCRA court notes,

> [T]he evidence in question was a black knit cap found at the scene of the shooting. While [appellant] offered evidence that one witness described the shooter to police[Footnote 14] as having worn a black knit cap at the time of the shooting, this was insufficient to establish that the cap *found at the scene* is the same cap which was *worn by the shooter*. Upon this record, [the PCRA

court] found nothing to establish that the hat recovered at the scene was actually connected to the shooting, and not a merely unrelated hat which had been discarded in the area for an unknown period of time. In order for DNA testing on the found hat to have any relevance to [appellant's] case, there must be evidence to establish that this is not merely *a* hat, but, rather, **the** hat. **See** Pa.R.E. 401 (providing that evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence in determining the action."); Pa.R.E. 402 (providing that evidence that is not relevant is not admissible). Without such evidence linking the cap itself to the shooter, even if the cap was tested for DNA and the results were inconsistent with [appellant], those results would not be exculpatory. As [appellant] did not establish that it is more likely than not that the cap recovered from the shooting scene was the same cap allegedly worn by the shooter, and, therefore, that DNA testing of the cap would have been consequential in challenging the identification of [appellant], this evidence is irrelevant. As DNA testing of the cap could not have corroborated [appellant's] alibi defense, and would not have been admissible on this record, this claim lack[s] arguable merit, and it fails.

[Footnote 14] Indeed, [the PCRA court] notes that [appellant's] evidence more strongly suggests that the cap found at the scene was **not** the same cap worn by the shooter: On February 11, 2010, Anthony Benton gave a statement to [h]omicide [d]etectives asserting that, at the time of the shooting, he looked out the first floor window of his residence after hearing 4-5 gunshots, and saw a [b]lack male in his late 20s to early 30s, with a full beard, standing near the decedent with a gun in his hand and wearing a black coat, a black knit hat, and blue jeans. Amended PCRA Petition, 2/10/17, at Exs. 1 and 2. Benton

asserted that he then saw the shooter run south down Taney Street as he was attempting to put the handgun in his waistband. *Id.* Benton asserted that he kept his focus on the fleeing shooter "to make sure he didn't come back," and that the shooter's "face really st[ood] out to me." *Id.* Considering Benton's opportunity to view the shooter, [the PCRA court] finds it telling that nowhere in Benton's account did Benton assert anything to suggest that the shooter discarded his black cap, or that the cap fell off the shooter's head during his flight from the scene.

PCRA court opinion, 6/19/18 at 8-9 (emphasis in original).

Based upon our review of the record, we find that the PCRA court's conclusions are well based in the record. Unlike the defendant in *Williams*, appellant has failed to establish that the DNA evidence from the black knit cap would have the ability to either demolish the Commonwealth's case or, inversely, set the Commonwealth's case in concrete. *See Williams*, 899 A.2d at 1064. Accordingly, appellant's first issue lacks arguable merit.

## II.

In his second issue on appeal, appellant argues that Attorney Jalon rendered ineffective assistance for failing to object to the trial court's flight instruction to the jury as it related to appellant. (Appellant's brief at 16.) Specifically, appellant contends that the flight instruction was improper because the Commonwealth did not present any evidence that appellant

knew that he was wanted by the police or that the police had obtained a warrant for his arrest. (**Id.** at 21.)

When reviewing a trial court's instructions to the jury, we are governed by the following standard:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

**Commonwealth v. Roane**, 142 A.3d 79, 95 (Pa.Super. 2016), quoting

**Commonwealth v. Trippett**, 932 A.2d 188, 200 (Pa.Super. 2007) (citation omitted).

When addressing jury instructions pertaining to flight, we have held that:

> [a] flight instruction is proper when:
>
> > a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.
>
> **Commonwealth v. Harvey**, [] 526 A.2d 330, 334 ([Pa.] 1987). "A defendant's knowledge may be

- 11 -

inferred from the circumstances attendant [to] his flight." ***Commonwealth v. Johnson***, [] 838 A.2d 663, 681 ([Pa.] 2003).

***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 714 (Pa.Super. 2013).

Here, appellant argues that the trial court erred when it gave a flight instruction to the jury because the Commonwealth failed to present sufficient evidence that a jury instruction on flight was justified. (Appellant's brief at 21-22.)

On this issue, the PCRA court reached the following conclusion:

> Here, Detective James Burke tried to find [appellant] at his girlfriend's house on February 19, 2010. [Appellant's] girlfriend, Nikki Williams, told Detective Burke that [appellant] lived there, but was not home at the time. Detective Burke informed Williams that [appellant] was wanted, that he should turn himself in or otherwise contact [the] police, and asked Williams to relate this information to [appellant] if she was able to make contact with him.[Footnote 15] [Appellant] was not arrested until March 3, 201[0], when Detective Burke found him at a house in Norristown. When he was asked his address after his arrest, [appellant] gave Williams' address. This evidence was sufficient to show that [appellant] had disrupted his normal pattern of living following the shooting in this case.
>
> > [Footnote 15] At trial, Detective Burke testified that, on February 20, 2010, he also approached [appellant's] grandmother, another girlfriend of [appellant's] named Lisa Green, and [appellant's] wife Nicole Carter, at their respective residences and that he told them all the same information which he told Williams. Detective Burke further testified that he and other members of the Homicide Division, Fugitive Squad,

> put up wanted posters around
> [appellant's] neighborhood on that same
> date.

PCRA court opinion, 6/19/18 at 10-11 (citations to the record and footnote 16 omitted).

Based on our review of the record, we find that the Commonwealth presented sufficient evidence that appellant either knew or had reason to know that he was wanted in connection with the February 11, 2010 shooting. Accordingly, the trial court did not abuse its discretion when it provided the jury with the flight instruction. Therefore, appellant's ineffective assistance of counsel claim pertaining to counsel's failure to object to the trial court's jury instructions is without arguable merit.

**III.**

Appellant next avers that appellate counsel[1] rendered ineffective assistance for failing to raise, brief, and argue before this court "the record-based claim that the trial court erred by refusing to issue a

---

[1] Attorney Jalon represented appellant both at trial and on direct appeal.

***Kloiber***[2] instruction in connection with Timothy Johnson's testimony." (Appellant's brief at 25.)

"We evaluate whether a ***Kloiber*** instruction is necessary under an abuse of discretion standard." ***Commonwealth v. Sanders***, 42 A.3d 325, 332-333 (Pa.Super. 2012), ***appeal denied***, 78 A.3d 1091 (Pa. 2013), citing ***Commonwealth v. Jones***, 954 A.2d 1194, 1198 (Pa.Super. 2008), ***appeal denied***, 962 A.2d 1196 (Pa. 2008).

Appellant specifically argues that the trial court erred when it failed to give the jury a ***Kloiber*** instruction because Johnson: (1) failed to identify appellant at the preliminary hearing as one of the men fleeing the scene immediately following the shooting; (2) testified at the preliminary hearing that he only picked appellant out of a photo array because appellant was someone he knew from the neighborhood; (3) failed to testify at trial that appellant was one of two men leaving the scene of the shooting; and (4) may have mistakenly identified appellant when he actually saw

---

[2] ***See Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954). The ***Kloiber*** court held that in cases where the:

> witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

***Id.*** at 826-827.

appellant's brother, Eric Fields, the day of the shooting. (Appellant's brief at 30.)

The PCRA court concluded as follows:

> Here, Johnson unequivocally identified [appellant] in a statement to police as one of two men standing on the corner before the decedent was shot, and then running from the scene. Johnson had known [appellant] for two years. However, at trial, Johnson first said he did not recall who was on the corner or who specifically ran away. Later, Johnson admitted that he had told detectives that he saw [appellant] running away and that that was the truth. He also stated on cross-examination that it "could be possible" that he confused [appellant] with [appellant's] brother, Eric Fields.
>
> These qualifications do not neccessitate [sic] the cautionary instruction under **Kloiber**. Johnson never failed to identify [appellant] as one of the people on the corner running from the scene. Although he began to recant his original identification at trial, he ultimately admitted that what was in his original statement was the truth.
>
> In any event, [the trial court] gave the jury the following identification instruction:
>
> > There were two identifications in this case which I will address with you. I am referring to the testimony you heard from Police Officer Rios, who identified Kelvin Bryant from a photo array as the person he chased on the night of February 11, 2010, and to the testimony you heard concerning Timothy Johnson's identification of [appellant] as one of the persons he had seen on the corner of Ridge and Taney Streets on the morning of February 11, 2010.

- 15 -

As you may recall, on cross-examination, Mr. Johnson indicated that he might have confused [appellant] with his brother, Eric Fields, and indicated that they do look alike.

In evaluating the testimony, in addition to the other instructions I have provided to you for judging the testimony of witnesses, you should consider the additional following factors.

Did the witness have a good opportunity to observe the person he identified? Was there sufficient lighting for that witness to make those observations? Was the witness close enough to the individuals to know the physical characteristics or to see that it was the person that he knows? When the identification was made, was it positive or was it qualified by any hedging or inconsistencies?

In considering whether or not to accept the testimony of these two witnesses, you should consider all of the circumstances under which the identifications were made.

[Notes of testimony], 2/6/13 at 30-31.

PCRA court opinion, 6/19/18 at 13-14 (additional citations to the record omitted).

Based upon our review of the record, we find that the PCRA court did not abuse its discretion when it refused to provide the jury with a ***Kloiber*** instruction, and we further find that its conclusions are well based in the record. Therefore, appellant's third issue lacks arguable merit.

**IV.**

In his fourth and final issue on appeal, appellant raises a cumulative prejudice claim. Specifically, appellant contends that the "cumulative prejudice from the multiple trial errors rendered [appellant's] trial fundamentally unfair." (Appellant's brief at 37.)

> [Our supreme court has] often held that "no number of failed [] claims may collectively warrant relief if they fail to do so individually." [**Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009)] (quoting **Commonwealth v. Washington**, [] 927 A.2d 586, 617 ([Pa.] 2007)). However, [the court has] clarified that this principle applies to claims that fail because of lack of merit or arguable merit. [**Commonwealth v. Sattazahn**, 952 A.2d 640, 671 (Pa. 2008)]. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed. **Id.**; **Johnson**, **supra** at 532 (citing **Commonwealth v. Perry**, [] 644 A.2d 705, 709 ([Pa.] 1994), for the principle that a new trial may be awarded due to cumulative prejudice accrued through multiple instances of trial counsel's ineffective representation.

**Commonwealth v. Spotz**, 18 A.3d 244, 321 (Pa. 2011).

Here, none of appellant's three issues pertaining to ineffective assistance of counsel was disposed of due to a lack of a showing of prejudice. Rather, all three issues failed because they lacked arguable merit. Accordingly, appellant's claim of cumulative prejudice from multiple errors is without merit.

Order affirmed.

J. S84039/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/19