IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester County Office of the Coroner,:
                  Appellant         :
                                  :
      v.                    :  No. 242 C.D. 2023
                                    :
Terence Keel and the University of   :
California-Los Angeles Institute for  :
Society and Genetics, Biostudies Lab :  Argued:  November 9, 2023

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED:  December 7, 2023

      The Chester County Office of the Coroner (Coroner) appeals from the March 1, 2023 order of the Court of Common Pleas of Chester County (trial court) affirming a Final Determination of the Pennsylvania Office of Open Records (OOR), which held that autopsy and toxicology reports are not exempt from disclosure under Section 708(b) of the Right-to-Know Law (RTKL)[1] or Article XII-B of The County Code, commonly known as the Coroner's Act.[2]  After review, we affirm the trial court.

## I.  Background

      On June 27, 2022, Terence Keel and the University of California-Los Angeles Institute for Society and Genetics, Biostudies Lab (Requesters), submitted a RTKL

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b).

[2] Act of August 9, 1955, P.L. 323, *as amended*, added by the Act of October 24, 2018, P.L. 931, No. 154 (Act 154), 16 P.S. §§ 1201-B-1252-B.

request (Request) to the Coroner seeking autopsy and toxicology reports for 17 decedents. The Coroner denied the request on August 2, 2022, citing Section 705 of the RTKL,[3] which establishes that an agency is not required to create a record, and Section 708(b) of the RTKL,[4] which establishes several categories of information that are exempt from public access. Requesters appealed to the OOR.

In support of its position denying the Request, the Coroner submitted an affidavit from Jesse Poole-Gulick (Poole-Gulick), a deputy coroner, who stated that three individuals identified in the Request could not be identified. Verification of death forms disclosing the manner and cause of death were available for the remaining individuals identified in the Request. Poole-Gulick advised that autopsy and toxicology reports were considered private records of a decedent that contained "highly sensitive and private information." Reproduced Record (R.R.) at 56a. The Coroner would release such records to "next of kin" or in response to a "lawfully issued subpoena[.]" *Id.* Otherwise, the requested records were exempt from disclosure pursuant to Section 708(b)(20) of the RTKL, which specifically excludes

---

[3] 65 P.S. § 67.705.

[4] Section 708(b) of the RTKL excludes 30 categories of information from public access. Relevant to the instant appeal, Section 708(b)(20), 65 P.S. § 67.708(b)(20), exempts

> [a]n autopsy record of a coroner or medical examiner and any audiotape of a postmortem examination or autopsy, or a copy, reproduction or facsimile of an autopsy report, a photograph, negative or print, including a photograph or videotape of the body or any portion of the body of a deceased person at the scene of death or in the course of a postmortem examination or autopsy taken or made by or caused to be taken or made by the coroner or medical examiner. This exception shall not limit the reporting of the name of the deceased individual and the cause and manner of death.

65 P.S. § 67.708(b)(20).

the release of autopsy records. Poole-Gulick further advised that the requested records were exempt from disclosure because they related to criminal and non-criminal investigations, and they were protected records under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).[5] Poole-Gulick asserted that the Coroner was not required to release any information beyond the verification of death form.

The OOR issued its Final Determination on September 30, 2022. At the outset, the OOR noted that the Coroner failed to demonstrate that it was a covered entity under HIPAA. Therefore, the OOR concluded that the Coroner's autopsy and toxicology reports were not exempt from disclosure under HIPAA.[6] The OOR also stated that the Coroner provided no legal authority for restricting access to autopsy reports beyond the decedent's next of kin or in response to a subpoena. In concluding that the requested records were not exempt from disclosure under the RTKL, the OOR cited *Penn Jersey Advance, Inc. v. Grim*, 962 A.2d 632 (Pa. 2009), in which our Supreme Court held that autopsy reports were one of the official records of a coroner's office that must be deposited with the prothonotary for inspection by

---

[5] 42 U.S.C. § 1320d-6.

[6] HIPAA regulations generally prohibit covered entities from using or disclosing protected health information. 45 C.F.R. § 164.508(a)(1). Covered entities under HIPAA are limited to health plans, health care clearinghouses, health care providers, and the business associates thereof, where provided. 45 C.F.R. § 160.102(a)-(b). A health plan under HIPAA is an individual or group plan that provides or pays the cost of medical care. 45 C.F.R. § 160.103. Health care provider is defined as a provider of services, including hospitals, rehabilitation facilities, and nursing facilities, a provider of medical or health services, including diagnostic and physical therapy services, and any other person or organization that furnishes, bills, or is paid for health care in the normal course of business. *Id.* Finally, a health care clearinghouse under HIPAA means a public or private entity, including a billing service, repricing company, community health management information system or community health information system, and "value-added" networks and switches. *Id.* At first blush, these definitions do not appear to encompass a coroner's office.

3

the public, pursuant to former Section 1251 of the Coroner's Act.[7] The OOR also relied on the Supreme Court's holding in *Hearst Television, Inc. v. Norris*, 54 A.3d 23 (Pa. 2012), that a coroner could not exercise discretion over the release of official records required by former Section 1251, and that a coroner's official records could be obtained upon payment of the fee provided for in former Section 1236.1(c) of the Coroner's Act.[8]

The OOR did not address the specific exemptions cited by Poole-Gulick, noting that Section 3101.1 of the RTKL, 65 P.S. § 67.3101.1, provides the RTKL "shall not apply" when any of its provisions regarding access conflict with any other federal or state law. The OOR acknowledged that former Section 1251, which formed the basis for the Supreme Court's holding in *Hearst*, had been repealed by Act 154; however, both former Section 1251 and new Section 1236-B of the Coroner's Act[9] required that the official records and papers of a coroner's office be deposited with the prothonotary. The only substantive difference between the two provisions is that Section 1236-B only applies to counties of the third through eighth class. Thus, the OOR held that case law interpreting former Section 1251 applied to an analysis of Section 1236-B. As autopsy reports were official records of a coroner's office, the Coroner was required to deposit such reports with the

---

[7] Former Section 1251, which was repealed by Act 154, provided that "[e]very coroner, within [30] days after the end of each year, shall deposit all of his official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein." *Formerly* 16 P.S. § 1251.

[8] Former Section 1236.1(c) was added to the Coroner's Act by the Act of November 29, 1990, P.L. 602, *formerly* 16 P.S. § 1236.1(c), and was repealed by Act 154.

[9] 16 P.S. § 1236-B.

prothonotary. The OOR also held that toxicology reports were an official record of the Coroner that should have been deposited with the prothonotary.

The OOR rejected the Coroner's construction of Section 1252-B of the Coroner's Act, 16 P.S. § 1252-B, which establishes the fees to be charged and collected for providing an autopsy report, toxicology report, inquisition or coroner's report, and cremation or disposition authorization. Section 1252-B also provides for the collection of "other fees as may be established from time to time for **other reports or documents requested by nongovernmental agencies** in order **to investigate a claim** asserted under a policy of insurance or **to determine liability for the death** of the deceased[.]" 16 P.S. § 1252-B (emphasis added). The Coroner argued that the bolded language limited the production of documents identified in Section 1252-B to nongovernmental agencies investigating an insurance claim or determining liability for a decedent's death. The OOR disagreed, deeming this provision a "catch-all" that was limited to records required by nongovernmental agencies for the specified purposes – it did not affect an individual's ability to request autopsy or toxicology reports from a coroner. R.R. at 302a. In drafting Section 1252-B, the General Assembly (GA) created "a process where specific fees are paid to obtain specific reports from coroners, without limitation." *Id.* at 303a.

The OOR noted that the Coroner failed to deposit its officials records and papers with the prothonotary, despite the clear language of Section 1236-B and the controlling legal precedent. The OOR opined that a finding of bad faith by a reviewing court, and the imposition of sanctions and penalties to offset Requesters' costs, would be appropriate under the facts presented, as it would provide the access to coroner records "envisioned by the [GA]" and affirmed by the Supreme Court, and would "discourage other agencies from acting similarly in violation of the public

5

interest."[10]  *Id.* at 306a.  Accordingly, the OOR granted Requesters' appeal and directed that the Coroner provide copies of the requested autopsy and toxicology reports upon receipt of the fees established in Section 1252-B.

The Coroner appealed the OOR's Final Determination to the trial court, which denied the appeal on March 1, 2023.  The trial court opined that the Supreme Court's holding in *Penn Jersey* that autopsy reports were official records of a coroner's office remained "valid and undisturbed."  R.R. at 389a.  While a conflict existed between the RTKL and the Coroner's Act with regard to the release of autopsy and toxicology reports, Section 3101.1 of the RTKL made it clear that, in the case of a conflict between the RTKL and another statute, the RTKL did not apply.  Thus, the trial court concluded that the Coroner's Act controlled the release of the requested records. Under this same analysis, the trial court dismissed the Coroner's argument that the requested records were exempt under the medical records exception in Section 708(b)(5) of the RTKL.[11]  The trial court agreed with the OOR that the Coroner had not demonstrated that the requested records were governed by HIPAA or a similar privacy law.

---

[10]  Section 1304(a) of the RTKL provides that, where a court reverses the final determination of an appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation if the court finds that the agency denied access to a public record willfully, with wanton disregard, or in bad faith, or where the agency's denial was not based on a reasonable interpretation of the law.  65 P.S. § 67.1304(a).  Section 1304(b) permits an award of sanctions if the court finds that the legal challenge was frivolous.  65 P.S. § 67.1304(b).  Section 1305(a) of the RTKL, 65 P.S. § 67.1305(a), authorizes the imposition of a civil penalty of not more than $1,500 if an agency denies access to a public record in bad faith.

The OOR does not have the authority to impose costs, fees, or penalties.  *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1140 (Pa. 2017).

[11] The trial court also suggested that Section 708(b)(5) only applied to the release of a living person's medical records, given that coroner records are covered by a separate exemption.

Citing *Hearst*, the trial court rejected the Coroner's argument that it had discretion when responding to records requests. The trial court acknowledged that the provisions of the Coroner's Act analyzed in *Hearst* and *Penn Jersey* were repealed by Act 154; however, the trial court did not consider the Act 154 amendments to the Coroner's Act to be "significant or dispositive." *Id.* at 390a. The trial court noted that a comment to Section 1252-B provided by the Local Government Commission (Commission)[12] states that Section 1252-B is analogous to former Section 1236.1(c), "except that the fees for reports have been increased." In addition, an earlier version of Senate Bill 1005 (SB 1005), which became Act 154, contained language specifying that Section 1236-B, requiring the coroner to deposit official records with the prothonotary, should not be construed as authorizing the disclosure of a record exempt from access under the RTKL. This language was removed from the enacted version of SB 1005. Thus, while the GA had the opportunity to address exemptions under the RTKL and the Coroner's Act, it "chose not to do so." *Id.* at 391a. Ultimately, the trial court held that language pertaining to requests from nongovernmental agencies did not change the public nature of autopsy reports or grant the Coroner discretion where the Supreme Court had "already determined there is none." *Id.* Therefore, the trial court affirmed the OOR.

---

[12] The Commission was established by the Act of May 29, 1935, P.L. 244, No. 102 (Act 102), with the stated purpose of studying and reporting on the functions of local government. It is comprised of five members of the Pennsylvania State Senate and five members of the Pennsylvania House of Representatives. One of the Commission's functions and responsibilities is to "[p]rovide a summary of acts signed into law by the Governor for distribution to Members of the Legislature and to other interested parties."
*See* http://www.lgc.state.pa.us/download.cfm?file=/Reports/Other/lgc_brochure.pdf (last visited Dec. 6, 2023).

The trial court did not address whether the Coroner denied the Request in bad faith or impose sanctions and penalties, as suggested by the OOR. This appeal followed.[13]

## II. Issues

On appeal, the Coroner argues that the trial court erred in concluding that the requested autopsy and toxicology reports were not exempt from disclosure, that the trial court failed to properly consider the Act 154 amendments to the Coroner's Act, and that the trial court improperly relied on *Hearst* and *Penn Jersey*.[14]

## III.  Discussion

Before we address the issues raised by the Coroner, it is helpful to summarize the relevant statutory provisions and legal precedent that will inform our analysis, the latter of which includes this Court's recent decision in *Allegheny County v. Hailer*, 298 A.3d 476 (Pa. Cmwlth. 2023). As always, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the [GA]." 1 Pa.C.S. § 1921(a). In the absence of a demonstrated constitutional infirmity, courts must generally apply the plain terms of a statute, as written. *Lower Swatara Twp. v. Pa. Lab. Rels. Bd.*, 208 A.3d 521, 530 (Pa. Cmwlth. 2019). Where the plain language in a statute is unambiguous, we must apply that language "without employing familiar canons of construction and without considering legislative intent." *Dubose v. Quinlan*, 173 A.3d 634, 643 (Pa. 2017). The plainness or ambiguity of statutory language is determined by reference to the language itself, as

---

[13] Our review of the trial court's decision is limited to whether the findings of fact are supported by competent evidence, whether the trial court committed an error of law, or whether the trial court abused its discretion in reaching a decision. *Pysher v. Clinton Twp. Volunteer Fire Co.*, 209 A.3d 1116, 1119 n.6 (Pa. Cmwlth. 2019).

[14] In its principal brief, the Coroner suggests that the trial court erred in failing to recognize its prior rulings, which allegedly align with the Coroner's position. As this Court is not bound by those decisions, our analysis in the instant appeal will not consider or address them.

8

well as the specific context in which the language is used and the broader context of the statute as a whole. *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013). We must not interpret statutory words in isolation but must read them with reference to the context in which they appear. *Id.* Moreover, we must presume that the GA "does not intend a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa.C.S. § 1922(1).

## A. Statutory Authority

### 1. RTKL

Under Section 305 of the RTKL,[15] records in the possession of a Commonwealth agency are presumed to be public unless they are exempt under Section 708(b) of the RTKL, protected by a privilege, or exempt under any other federal or state law or regulation or judicial order or decree. Section 708(b)(20) of the RTKL exempts from disclosure a coroner's autopsy records, including audiotapes, photographs, and video recordings. The name of the deceased and the cause and manner of his or her death may be reported. Per Section 3101.1 of the RTKL, however, the RTKL "**shall not apply**" when any of its provisions regarding access conflict with any other federal or state law. 65 P.S. § 67.3101.1 (emphasis added). Therefore, Section 708(b)(20) of the RTKL restricts access to a coroner's autopsy records, unless access is otherwise provided by law.

### 2. Coroner's Act

Section 1236-B of the Coroner's Act provides that, in counties of the third through eighth classes, "every coroner, within 30 days after the end of each year, **shall deposit all official records and papers** for the preceding year in the Office of the Prothonotary for the inspection of **all** persons interested therein." 16 P.S. § 1236-

---

[15] 65 P.S. § 67.305.

9

B (emphasis added). Section 1252-B of Coroner's Act mandates that the coroner "shall charge and collect" a fee, as specified, for providing an autopsy report, toxicology report, inquisition or coroner's report, and cremation or disposition authorization, as well as "**other fees as may be established** from time to time **for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased** . . . ." 16 P.S. § 1252-B (emphasis added).

## B. Case Law

### 1. *Penn Jersey*

*Penn Jersey* concerned whether an autopsy report was one of the official records that former Section 1251 of the Coroner's Act[16] required a coroner to deposit with the prothonotary within 30 days after the end of each year. Because conducting autopsies was one of a coroner's official duties, the Supreme Court held that the resulting autopsy reports constituted "official records and papers" within the meaning of former Section 1251. *Penn Jersey*, 962 A.2d at 637. The Supreme Court acknowledged that such records could reveal a decedent's "potentially privileged" medical history, as well as graphic autopsy photographs. *Id.* Although it recognized the legitimate privacy concerns related to disclosure of such information, the Supreme Court noted that trial courts were "adequately equipped and authorized to protect autopsy reports from disclosure based on 'judicial discretion and necessity' under appropriate circumstances." *Id.* Where, for example, an autopsy report contained graphic photographs or privileged information, anyone with standing "to protect an interest in such material" could seek relief from the trial court. *Id.*

---

[16] *Formerly* 16 P.S. § 1251.

## 2. *Hearst*

In *Hearst*, our Supreme Court reviewed whether former Sections 1236.1(c) and 1251 of the Coroner's Act granted a coroner discretion over the release of coroner records. Former Section 1236.1(c) of the Coroner's Act relevantly provided as follows:

> (c) The coroner may charge and collect a fee of up to one hundred dollars ($100) for each autopsy report, up to fifty dollars ($50) for each toxicology report, up to fifty dollars ($50) for each inquisition or coroner's report and such other fees as may be established from time to time for other reports and documents requested by nongovernmental agencies.

*Formerly* 16 P.S. § 1236.1(c).

Former Section 1251 of the Coroner's Act, also repealed by Act 154, required every coroner to deposit all "official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein." *Formerly* 16 P.S. § 1251. The *Hearst* Court interpreted this language to require the deposit of all official coroner records and papers with the prothonotary within 30 days after the end of each year. *Hearst*, 54 A.3d at 25. For those unwilling to wait until after the end of the year, former Section 1236.1(c) established a fee schedule for obtaining the same records. *Id.* at 33.

## 3. *Hailer*

*Hailer* concerned a request for autopsy and toxicology reports possessed by the Allegheny County Office of the Medical Examiner (ME). The OOR, citing *Hearst*, issued a final determination directing the release of the requested reports upon payment of the appropriate fee. The Allegheny County Court of Common Pleas (Allegheny County trial court) reversed, in part, because the *Hearst* Court analyzed statutory provisions that were repealed by Act 154. Additionally, the new

11

provisions of the Coroner's Act contained language that did not appear in those which had been repealed.

The Allegheny County trial court construed newly-enacted Section 1252-B, providing for the imposition of fees for requests "by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased[,]" to mean that a coroner must review whether the requester was a nongovernmental agency and whether the information sought was for the purpose of investigating an insurance claim or to determine liability for the death of a decedent. Therefore, the requesters in *Hailer* could only obtain the autopsy and toxicology reports if they qualified as a nongovernmental agency seeking to determine liability for the decedent's death. The requesters had not asserted they were investigating an insurance claim, and the trial court considered the determination of liability for the death of a decedent to be an issue typically decided by a court. As a result, the Allegheny County trial court held that the requesters were not entitled to the autopsy and toxicology reports.

This Court reversed based on the plain language of Section 1252-B, which states that the coroner "shall charge and collect" a specific fee for autopsy reports, toxicology reports, inquisition or coroner's reports, and cremation or disposition authorizations. 16 P.S. § 1252-B. Section 1252-B was simply a fee schedule that established the costs to be collected by a coroner's office when providing copies of its records. Furthermore, Section 1252-B provides that the coroner "shall charge and collect . . . other fees[,]" as established, "for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased." *Id.* We declined to construe Section 1252-B as limiting the receipt of coroner records

12

to nongovernmental agencies that seek records to investigate an insurance claim or to determine liability for the death of a decedent. Instead, this language required that the coroner "'charge and collect' other fees that have been established for nongovernmental agency requests relating to those discrete types of inquiries." *Hailer*, 298 A.3d at 481. Section 1236-B of the Coroner's Act supported our interpretation of Section 1252-B, "as coroner records and papers in counties of the third through eighth class are publicly accessible 'within 30 days after the end of each year' following the deposit of such records 'in the Office of the Prothonotary for the inspection of all persons interested therein.'" *Id.*

Our conclusion in *Hailer* was bolstered by the legislative history of Section 1252-B, which revealed that SB 1005, at one point, contained language stating that Section 1252-B "may not be construed as authorizing disclosure of a record exempt from public access" under the RTKL.[17] This language was removed from subsequent versions of SB 1005, which we considered a "strong indicator that the [GA] intended that coroner records would be publicly accessible, provided the appropriate fee was paid." *Id.* at 482. Also stricken from SB 1005 was language in Section 1236-B that would have relevantly provided that "[e]xcept as provided under this article, public disclosure of a coroner record shall be in accordance with the [RTKL.]"[18] Based on the above analysis, we concluded that the requested autopsy

---

[17] *See* SB 1005, Printer's No. 1782, at 85-86, May 22, 2018. https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2017 &sessInd=0&billBody=S&billTyp=B&billNbr=1005&pn=1782 (emphasis added) (last visited Dec. 6, 2023).

[18] *See* SB 1005, Printer's No. 1782, at 84, May 22, 2018. https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2017 &sessInd=0&billBody=S&billTyp=B&billNbr=1005&pn=1782 (emphasis added) (last visited Dec. 6, 2023).

and toxicology reports were accessible upon payment of the fee established in Section 1252-B. We did not address the "continued viability of *Hearst*." *Id.*

### C. The Coroner's Appeal

Turning to the instant appeal, the Coroner argues that the Act 154 amendments to the Coroner's Act prohibit the release of autopsy and toxicology reports. The Coroner maintains that the single page verification of death form containing a decedent's manner and cause of death satisfies the Coroner's obligation under Section 1236-B of the Coroner's Act to deposit official records with the prothonotary. Autopsy and toxicology reports, the Coroner maintains, are subject to privacy protections under HIPAA and are exempt from disclosure under the RTKL.

The Coroner also argues that *Penn Jersey* and *Hearst* are no longer controlling precedent, as they analyzed provisions repealed by Act 154. *Hearst*, according to the Coroner, is no longer relevant because Section 1252-B restricts the release of information to nongovernmental agencies investigating insurance claims or determining liability for the death of a decedent. By way of additional support, the Coroner points to provisions in the Coroner's Act that require the retention of tissue, organs, blood, bodily fluids or gases, or other specimens necessary to establish and defend against challenges to a decedent's cause and manner of death,[19] or that permit the retention of deoxyribonucleic acid (DNA) specimens "for diagnostic, evidentiary[,] or confirmatory purposes."[20] The Coroner contends that providing the public "this sort of confidential information is not appropriate under any common sense analysis[.]" Coroner's Br. at 27.

---

[19] Section 1202-B of the Coroner's Act, 16 P.S. § 1202-B (Definitions).

[20] Section 1219-B(d)(1) of the Coroner's Act, 16 P.S. § 1219-B(d)(1).

The Coroner does not deny that the Commentary provided by the Commission recognizes that a proposed, and deleted, amendment to SB 1005 would have specified that Section 1252-B did not authorize the release of records exempt from access under the RTKL. The Coroner suggests, however, that such an amendment was unnecessary because Section 1252-B already contained language restricting access to nongovernmental agencies investigating insurance claims or determining liability for the death of a decedent.

Requesters argue in response that *Hailer* controls our disposition here, as *Hailer* concerned a "virtually identical request for records and virtually identical legal argument . . . opposing disclosure." Requesters' Br. at 6. In light of *Hailer*, Requesters suggest that the Coroner's continued appeal in this matter merits an award of reasonable attorney fees and costs of litigation or the imposition of sanctions, as provided for in Section 1304(a)-(b) of the RTKL.

In its reply brief, the Coroner contends that *Hailer* is not controlling precedent, as *Hailer* did not address whether official records under Section 1236-B are "different" from the autopsy reports, toxicology reports, inquisition or coroner's reports, and cremation or disposition authorizations mentioned in Section 1252-B. Coroner's Reply Br. at 6. In this respect, the Coroner vigorously maintains that the various reports itemized in Section 1252-B should not be considered the official records and papers required to be deposited with the prothonotary under Section 1236-B. Finally, the Coroner denies that its failure to withdraw this appeal in the wake of *Hailer* renders its appeal frivolous.

The Coroner's argument regarding Section 1236-B is wholly unpersuasive, as it ignores the plain language in that provision, which is nearly identical to its predecessor, former Section 1251, with the exception that Section 1236-B only

15

applies to third through eighth class counties. The Commentary prepared by the Commission states that new Section 1236-B "[r]eflects [former] Section 1251, but [Section 1236-B] is restricted to counties of the third through eighth class."[21] The Coroner's argument also fails to acknowledge the basis for the Supreme Court's conclusion in *Penn Jersey* that autopsy reports are official records of a coroner's office. In *Penn Jersey*, the Supreme Court recognized that a coroner's official duties included conducting autopsies. As a result, it held that autopsy reports constituted an official record and paper of the coroner's office. Act 154 did not strip the Coroner of its duty to conduct autopsies. In point of fact, Section 1219-B(a) of the Coroner's Act explicitly provides that where a coroner cannot "determine the cause and manner of death, **the coroner shall perform or order an autopsy** on the body." 16 P.S. § 1219-B(a) (emphasis added). Thus, the Supreme Court's reasoning in *Penn Jersey* remains sound.

In *Hailer*, this Court considered, and rejected, the Coroner's argument that Section 1252-B restricts the release of the specified reports to nongovernmental agencies either investigating insurance claims or determining liability for a decedent's death. The Coroner's argument that "official records" under Section 1236-B is limited to the cause and manner of death, and that the reports mentioned in Section 1252-B are not reflective of a coroner's official acts, is not supported by any provisions in the Coroner's Act or the legislative history of Act 154. It is noteworthy that the only information deposited with the prothonotary by the Coroner – a decedent's manner and cause of death – corresponds to that which is authorized by Section 708(b)(20) of the RTKL. Per Section 3101.1 of the RTKL, however, the

---

[21] *See* Commission Act 154 Section-by-Section Commentary, Oct. 24, 2018, page 14. http://www.lgc.state.pa.us/download.cfm?file=/Reports/countyCode/Act_154_of_2018_Commentary_10-24-2018.pdf (last visited Dec. 6, 2023).

16

limitation in Section 708(b)(20) "**shall not apply**"[22] and gives way to the right of access established in Section 1236-B of the Coroner's Act. The absence of legal authority supporting the Coroner's argument suggests not so much a reasoned interpretation of Sections 1236-B and 1252-B as an attempt to justify the Coroner's past practice, which utterly ignores the scope of access provided by the Coroner's Act.

As the trial court noted, a comment to Section 1252-B prepared by the Commission indicates that Section 1252-B is analogous to former Section 1236.1, except that the fees for reports have been increased. This comment appears in a Section-by-Section Commentary (Commentary) the Commission prepared following Act 154's enactment.[23] The Commission also drafted an Executive Summary of Act 154, which similarly reflects that Section 1252-B "contains the fee schedule previously in Section 1236.1 (Requests for Examinations and Reports). The fees for reports as set forth in [Section 1252-B] have been increased . . . to permit a greater recovery of the actual costs of the services."[24]

Both former Section 1236.1(c) and current Section 1252-B provide for the collection of "other fees as may be established from time to time for other reports and documents requested by nongovernmental agencies."[25] Act 154 simply clarified

---

[22] 65 P.S. § 67.3101.1 (emphasis added).

[23] *See* Commission Act 154 Commentary, Oct. 24, 2018, page 14. http://www.lgc.state.pa.us/download.cfm?file=/Reports/countyCode/Act_154_of_2018_Commentary_10-24-2018.pdf (last visited Dec. 6, 2023).

[24] *See* Commission Act 154 Executive Summary, Oct. 24, 2018, page 7. http://www.lgc.state.pa.us/download.cfm?file=/Reports/countyCode/Act_154_of_2018_Executive_Summary_10-24-2018.pdf (last visited Dec. 6, 2023).

[25] *Formerly* 16 P.S. § 1236.1(c); 16 P.S. § 1252-B.

17

the purposes for which a nongovernmental agency might request "other reports and documents[.]" One of the presumptions to be used in ascertaining legislative intent is that "when a court of last resort has construed the language used in a statute, the [GA] in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4). Section 1252-B is essentially identical to former Section 1236.1(c), which the *Hearst* Court held was a fee schedule for obtaining the specified coroner records, should a requester not wish to wait until the records are deposited with the Prothonotary. The Coroner has not presented a compelling argument for construing Section 1252-B in any other manner.

Based on the above analysis, we conclude that the trial court did not err in affirming the OOR, as production of the requested records only requires payment of the fees set forth in Section 1252-B of the Coroner's Act.

### D. Sanctions

Section 1304(a) of the RTKL provides that, where a court reverses the final determination of an appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation if the court finds that the agency denied access to a public record willfully, with wanton disregard, or in bad faith, or where the agency's denial was not based on a reasonable interpretation of the law. 65 P.S. § 67.1304(a). Section 1304(b) permits an award of sanctions if the court finds that the legal challenge was frivolous. 65 P.S. § 67.1304(b). A requester seeking sanctions bears the burden of proving that an agency acted in bad faith. *Uniontown Newspapers, Inc. v. Dep't of Corr.*, 185 A.3d 1161, 1171 (Pa. Cmwlth. 2018). Evidence of bad faith is necessary

to impose fees and costs on that basis. *Bagwell v. Pa. Dep't of Educ.*, 103 A.3d 409, 421 (Pa. Cmwlth. 2014).

Instantly, Requesters seek fees, costs, and/or sanctions based on the Coroner's failure to withdraw its appeal after this Court issued its decision in *Hailer*.[26] Although the Coroner presents a somewhat tortured argument that "official records" deposited with the prothonotary pursuant to Section 1236-B of the Coroner's Act are not the same documents as the reports specified in Section 1252-B's fee schedule, the Coroner's failure to withdraw its appeal does not rise to the level of bad faith. While the Coroner declined to produce the requested records based on its interpretation of the Coroner's Act, the Coroner did disclose the cause and manner of death for the individuals identified by Requesters, as authorized by Section 708(b)(20) of the RTKL. Therefore, we conclude there is no basis for awarding attorney's fees, costs of litigation, or sanctions in this matter.

## IV. Conclusion

Section 1252-B of the Coroner's Act, 16 P.S. § 1252-B, establishes the costs to be collected by a coroner's office when providing copies of autopsy reports, toxicology reports, inquisition or coroner's reports, and cremation or disposition authorizations. Section 1252-B also provides that the coroner "shall charge and collect . . . other fees[,]" as established, "for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased." *Id.* As a result, the trial court did not err in affirming the OOR's Final Determination that directed the Coroner to provide copies of the requested autopsy and toxicology reports upon

---

[26] As noted earlier, the OOR suggested that sanctions might be appropriate, given the Coroner's failure to deposit its officials records and papers with the prothonotary; however, the trial court's opinion, made no findings in that regard.

19

receipt of the fees established in Section 1252-B. Accordingly, we affirm the trial court. We decline to impose attorney's fees, costs of litigation, or sanctions as provided in Section 1304 of the RTKL for the reasons set forth in the foregoing opinion.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester County Office of the Coroner,:
             Appellant       :
                               :

        v.              :  No. 242 C.D. 2023
                               :

Terence Keel and the University of   :
California-Los Angeles Institute for  :
Society and Genetics, Biostudies Lab :

# **O R D E R**

AND NOW, this 7th day of December, 2023, the March 1, 2023 order of the Court of Common Pleas of Chester County is hereby AFFIRMED.

                                  _____
                                  ELLEN CEISLER, Judge